UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOANNE MURPHY, on behalf of
herself and all other Illinois residents
similarly situated,

          Plaintiff,

vs.                               08 C 801

CAPITAL ONE BANK, a Virginia
State bank,

          Defendant.

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Capital One Bank ("Capital One") to strike Plaintiff Joanne Murphy's claim for damages based on overlimit fees assessed after March 1, 2008, pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, the motion is denied.

## BACKGROUND

Murphy, an Illinois resident, originally filed this action in January 2008, on behalf of herself and a putative class of Illinois residents similarly situated, in the Circuit Court of Cook County, Illinois, against Capital One, a Virginia corporation. Capital One removed Murphy's suit to this court, asserting federal subject matter

jurisdiction in diversity pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).

According to the complaint, Capital One violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILSC 505/2, by charging Murphy, a Capital One credit cardholder, and the purported class[1] an over-the-limit fee in one or more monthly billing cycles over the past three years even though each cardholder timely paid the "minimum amount due" for those cycles.

On March 1, 2008, Capital One converted from a Commonwealth of Virginia charter to a national bank.[2] Shortly thereafter, on June 26, 2008, Capital One filed the instant motion to strike Murphy's ICFA claim for damages based on overlimit fees assessed after March 1, 2008.

---

[1] Murphy's purported class definition includes: All natural persons who have or had Capital One credit card accounts with billing addresses in Illinois and who, in one or more billing cycles, timely paid at least the "Minimum Amount Due" for the billing cycle and did not make purchases or other charges during the billing cycle, but who were nevertheless charged an over-the-limit fee for the billing cycle.

[2] Federal Rule of Evidence 201(d) mandates that a court take judicial notice of adjudicative facts when a party requests that it do so and supplies the court with the necessary information. Here, Capital One has both requested that we take judicial notice of its conversion to a national bank and supplied the necessary documentation to establish the facts upon which its argument relies.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" upon a "motion made by a party either before responding to the pleading or, if a responsive pleading is not allowed, within 20 days after being served with the pleading." Despite this time restriction, a district court may "consider a motion to strike at any point in a case." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991). The purpose behind Rule 12(f) is to exclude irrelevant material from pending litigation. *Donovan v. Robbins*, 99 F.R.D. 593, 596 (N.D. Ill. 1983), *rev'd on other grounds*, 752 F.2d 1170 (7th Cir. 1984). Though motions to strike are not favored, they are considered to be useful and appropriate tools for weighing the legal significance of uncontroverted facts. *U.S. v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975).

A court must construe all well-pleaded facts in the non-moving party's favor on a Rule 12(f) motion. *Id.* A motion to strike "will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense and are inferable from the pleadings." *Williams*, 944 F.2d at 1400 (internal citations omitted).

With these principles in mind, we turn to the instant motion.

## DISCUSSION

I.  **Federal Preemption**

The main issue Capital One's motion presents is whether Capital One may be held liable for damages stemming from its alleged violations of the ICFA that took place after it became a national bank on March 1, 2008. Capital One argues that it cannot be held liable for these damages because, as a national bank, it is subject to the National Bank Act (the "NBA"), 12 U.S.C. § 21 *et seq.*, and the NBA preempts the ICFA.

The NBA controls the business activities of national banks. *Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1564 (7th Cir. 2007). As per Congress's instructions, the NBA is supervised by the Office of the Comptroller of the Currency (the "OCC"). *Id.* The OCC regulates the operations of national banks. *Id.*

The main issue presented by Capital One's motion is whether the ICFA's state regulation on Capital One is preempted by the NBA pursuant to the Supremacy Clause of Article VI of the Constitution. Article VI of the Constitution provides: "the Laws of the United States...shall be the supreme Law of the Land;... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. The purpose of the Supremacy Clause is "to prevent the enforcement of

state laws that conflict with federal laws or regulations." *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 746 (7th Cir. 2005).

There are three ways in which a state law may be preempted by federal law or federal regulation: 1) express preemption, 2) field preemption, and 3) conflict preemption. *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008).

**A.     Field Preemption**

Field preemption results "when federal law so thoroughly 'occupies a legislative field' as to make it reasonable to infer that Congress left no room for the states to act." *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005) *Id. (quoting Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). It is undisputed that Congress did not intend for the NBA to control the entire field of law concerning national banks. In fact, OCC regulations identify situations where the NBA specifically does not preempt state law. 12 C.F.R. § 7.4008 (d)(1), (e). As these regulations make clear, there is no field preemption of state law by the NBA.

**B.     Express Preemption**

"Express preemption occurs when a federal statute [or regulation] explicitly states that it overrides state or local law." *Hoagland*, 415 F.3d at 696; *see also Hillsborough County v. Automated Med. Labs, Inc.*, 471 U.S. 707, 713 (1985). An

example of language that expressly preempts state law can be found in the Employee Retirement Income Security Act: "...this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan..." 29 U.S.C. § 1144(a).

Capital One argues that pursuant to the NBA the following OCC regulation demonstrates that Congress intended to preempt state law: "...state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks." 12 C.F.R. § 7.4008(d)(1). In comparing 12 C.F.R. § 7.4008(d)(1) with the express preemption language in ERISA, it is clear that the OCC regulation does not provide the explicit statement necessary to establish express preemption because the OCC regulation leaves it open to the courts to decide in any given matter whether a state law obstructs, impairs, or conditions a bank's powers under the NBA.

## C. Conflict Preemption

Conflict preemption exists where "it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Hoagland*, 415 F.3d at 696 (*quoting Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). As the moving party, Capital One bears the burden of establishing that such

a conflict exists. *See Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). Capital One argues that if Murphy ultimately establishes that its practices with regard to overlimit fees are unfair and deceptive under the ICFA, it would be required to change its Minimum Payment Due calculations and/or add disclosures to its billing statements for Illinois residents. According to Capital One, such a requirement would hinder its ability to exercise its powers under the NBA.

This argument is not sufficient to demonstrate a conflict would necessarily result between the applicable federal and state rules such that it would be impossible for Capital One to comply with both. First, Murphy is not seeking an injunction commanding the future act Capital One describes. She seeks redress only for Capital One's past allegedly deceptive acts. Capital One attempts to transform available options if its acts are found to be in violation of the ICFA into mandated requirements under the ICFA. What changes Capital One could voluntarily make to its business practices to avoid future liability are irrelevant to a determination of the legality of past conduct. Furthermore, the ICFA does not dictate that Capital take a particular action which would be necessary to show that taking that action forces conflicting responsibilities under state and federal rules. Thus, this argument fails to establish that a conflict will necessarily exist between the NBA and the ICFA such that

Murphy's request for damages could not succeed and is therefore immaterial.

As a result, we do not find that Murphy's claim for damages is so devoid of merit that it must be stricken. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Centers*., 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998). Consequently, Capital One's motion to strike Murphy's ICFA claim for damages based on overlimit fees assessed after March 1, 2008, is denied.

## CONCLUSION

For the foregoing reasons, Capital One's motion to strike is denied.

*/s/ Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:  August 18, 2008